Greg S. Ericksen (1002)
Attorney at Law
1065 South 500 West
P.O. Box 609
Bountiful, UT 84011
Telephone: (801) 299-5519
Facsimile: (801) 299-9799

Mark M. Bettilyon (4798)
Arthur B. Berger (6490)
Ryan B. Bell (9956)
Mica McKinney (12163)
RAY QUINNEY & NEBEKER PC
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| ORBIT IRRIGATION PRODUCTS, INC., a Utah Corporation, | **AMENDED COMPLAINT** |
| Plaintiff, | |
| vs. | Civil No.1:11-cv-00012-DAK |
| TAIZHOU DONGFANG LIGHT DECORATIONS CO., LTD., a Chinese company ZHEJIANG HONGCHEN IRRIGATION EQUIPMENTCO., ltd, a Chinese corporation; HONG CHENG, a Chinese corporation; LUO JUN, an individual; CHINA EXPORT & CREDIT INSURANCE CORPORATION a/k/a SINOSURE, a Chinese corporation; and DOES 1-10, | Judge Dale A. Kimball (Jury Demanded) |
| Defendants. | |

Plaintiff ORBIT IRRIGATION PRODUCTS, INC. ("ORBIT"), brings this action against defendants TAIZHOU DONGFANG LIGHT DECORATIONS CO., LTD., ZHEJIANG HONGCHEN IRRIGATION EQUIPMENTCO., ltd., HONG CHENG, LUO JUN, CHINA EXPORT & CREDIT INSURANCE CORPORATION ("CHINA EXPORT") and DOES 1-10, and alleges as follows:

## THE PARTIES

1.      ORBIT designs, manufactures and distributes sprinkler and irrigation products to various customers around the world with its principal place of operation at 845 North Overland Road, North Salt Lake, Davis County, State of Utah. Orbit and its predecessor companies have been in business for over 40 years.  During that time, Orbit has put in place the infrastructure and resources needed to service retailers across the world, including large chain stores such as Wal Mart, Home Depot and Lowes.  Orbit has also built up significant brand recognition and has developed a reputation for innovation and excellence.

2.      TAIZHOU DONGFANG LIGHT DECORATION CO., LTD, ZHEJIANG HONG CHEN IRRIGATION EQUIPMENTCO., ltd.and HONG CHENG are all companies that manufacture various products including sprinkler and irrigation components in a factory located at No. 888-10 Maizhiqiao Road East, Luqiao, Taizhou, Zhejiang, China.

3.      On information and belief, TAIZHOU DONGFANG LIGHT DECORATION CO., ZHEJIANG HONG CHEN IRRIGATION EQUIPMENTCO., ltd. and HONG CHENG are the same company, alter egos of each other, and/or in conspiracy with one another.  Hereinafter these three companies shall be referred to as "DONGFANG."

4.      On information and belief, LUO JUN owns and manages DONGFANG, acting as its Vice General Manager.

5.     On information and belief, LUO JUN was at all times mentioned an agent, owner and/or employee of DONGFANG, acting within the scope of such agency or employment.

6.     On information and belief, LUO JUN is a citizen of China.

7.     On information and belief, CHINA EXPORT, also known or operating as SINOSURE, is a Chinese corporation.

8.     On information and belief, Does 1-10 are (a) subsidiaries, divisions, affiliates, partners, joint venturers or distributors of or for DONGFANG; and/or (b) individuals and/or corporate entities who, directly or indirectly, have knowingly or otherwise participated in, benefited from, solicited, assisted, or aided in the activities complained of herein, and/or had the right or ability to control the activities complained of herein and/or (c) persons and entities in conspiracy with Defendants, including companies who are competitors of ORBIT.  The identities and capacities of Doe Defendants 1-10 are not presently known to ORBIT.  ORBIT will amend this Complaint to include such information when it is ascertained.

## JURISDICTION AND VENUE

9.     This is an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35 of the United States Code.

10.     This is an action for false advertising arising under the provisions of the Lanham Act, Title 15, chapter 22 of the United States Code.

11.     This is an action for breach of contract and specific performance under the Utah Uniform Commercial Code (Title 70A, chapter 2) and other provisions of Utah law and for misappropriation of trade secrets under the Utah Uniform Trade Secrets Act.

12.     This is also an action for intentional interference with economic relations, defamation and injurious falsehood, and conspiracy arising under the common law of Utah.

13.     In addition, this is an action for declaratory judgment.

14.     Subject-matter jurisdiction over ORBIT's claims is conferred upon this Court by 28 U.S.C. §§ 1331, 1332, and 1338(a).

15.     On information and belief, DONGFANG and LUO JUN have contracted to provide goods in the State of Utah, solicited business in the State of Utah, transacted business within the State of Utah, conspired with residents of the State of Utah,  committed tortuous acts causing injury in the State of Utah and attempted to derive financial benefit from residents of the State of Utah, including benefits directly related to the instant patent infringement, misappropriation of trade secrets, breach of contract, breach of duty of fair dealing, intentional interference, defamation and injurious falsehood, false advertising, and conspiracy causes of action set forth herein.

16.     DONGFANG and LUO JUN have also agreed that the state and federal courts of the State of Utah have exclusive jurisdiction over any dispute arising from such contracts or relating to the goods identified in the contract.

17.     On information and belief, DONGFANG and LUO JUN have placed their infringing products into the stream of commerce and/or advertised or offered to sell their products, throughout the United States, which products have been offered for sale, sold and/or used in the State of Utah and/or in the District of Utah.

18.     DONGFANG and LUO JUN have also caused tortious injury in this state with intent to harm ORBIT in this state.

19.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and/or 1400.

**INTELLECTUAL PROPERTY**

20.     ORBIT owns U.S. Patent No. 6,874,696 (the "'696 Patent") entitled "Adjustable Sprinkler Riser with Offset Joint," owns U.S. Patent No. 6,619,570 (the "570 Patent") entitled "Telescoping Watering Wand," owns U.S. Patent No. 6,109,546 entitled "Lawn Sprinkler and bearing therefore" (the "'546 Patent"), owns U.S. Design Patent No. 495,026 (the "'026 Patent") entitled "Hose Nozzle," owns U.S. Design Patent No. 482,428 (the "'428 Patent") entitled "Hose Nozzle."  The aforementioned patents are referred to herein as the "Patents."

21.     ORBIT is also the original innovator and designer of several other irrigation-related products and the originator of certain trademarks, trade dress and logos, including, but not limited to, the trademark "HARD TOP" with Trademark Registration No. 2,575,043.  Orbit has also sold sprinkler and irrigation products which have a distinctive look and feel, which consumers and customers of ORBIT have come to associate with ORBIT.  ORBIT has further used distinctive brands, logos and packaging in connection with its sales of sprinkler and irrigation products.  ORBIT has also used distinctive coloring and distinctive product presentations in catalogs, in trade magazines, on the internet and in retail establishments across the country.  Consumers and customers have come to associate these trademarks and this trade dress with ORBIT.

**SUPPLIER AGREEMENT**

22.     In November 2004, ORBIT signed a contract with DONGFANG to manufacture a limited number of its products, including the products protected by the Patents.

23.     ORBIT's and DONGFANG's agreement is memorialized in a "Supplier Agreement" that DONGFANG and LUO JUN executed in November 2004.  A copy of this Agreement is attached hereto as Exhibit A and hereafter incorporated by this reference.

24.     Under the Agreement DONGFANG agreed to manufacture for ORBIT sprinkler irrigation components as identified by ORBIT in purchase orders.

25.     The Supplier Agreement incorporates ORBIT'S Purchase Order Terms and Conditions and ORBIT's Standards for Suppliers.

26.     Under the Agreement, DONGFANG manufactured, on ORBIT's behalf, a limited number of ORBIT products.

27.     To facilitate, this relationship, ORBIT provided DONGFANG with ORBIT's proprietary drawings, designs, specifications, technical information, trademarks, logos and trade dress.

28.     Under the Supplier Agreement, DONGFANG and its agents, including LUO JUN agreed to keep all such information confidential:  "Supplier shall not at any time, during or after the term of this Agreement, disclose to others and will not take for its own purposes or the purpose of others any trade secrets, confidential information, knowledge, designs, data, know-how, or any other information considered 'confidential' by the Purchaser.  Supplier recognizes that this obligation applies not only to technical information, designs and marketing, but also to any business information that the Purchaser treats as confidential. . . . Any information that is not readily available to the public shall be considered to be a trade secret and confidential."  Ex. A at 8.

29.     The Supplier Agreement also makes clear that once DONGFANG has accepted a purchase order its "ACCEPTANCE IS EXPRESSLY LIMITED TO ALL OF THE TERMS AND CONDITIONS OF THIS ORDER, INCLUDING ANY AND ALL ATTACHMENTS."  Ex. A at 4.  DONGFANG further agreed that "Supplier's failure to comply with each and every

term of this order shall constitute an event of default and shall be grounds for the exercise by

Purchaser of any of the remedies provided for in these Terms and Conditions." *Id.*

30. Such Terms and Conditions include the following:

a. All payments were due "TT60," which means that payments are not due

until sixty (60) days after the products have been shipped. *Id.* at 2.

b. "[A]ll goods shall be subject to inspection and test by the purchaser and its

agents or employees and any governmental agency to the extent

practicable at any and all times and places including the period of

manufacture and prior to final acceptance by the customer." *Id.* at 5.

c. "THE TIME SPECIFIED HEREIN FOR SHIPMENT OF GOODS IS OF

THE ESSENCE OF THIS AGREEMENT AND FAILURE TO SHIP

WITHIN SUCH TIME SHALL BE CONSIDERED A MATERIAL

BREACH OF THE AGREEMENT." *Id.* Such breaches are also subject

to the contractual remedies provided in the Supplier Agreement. *Id.*

d. "Price Guarantees . . . In the event that prior to final shipment under this

order, Supplier sells or offers to sell to others goods substantially of the

same kind as ordered herein at lower prices and/or terms more favorable to

a third party than those stated in this order, the prices and/or terms herein

shall be deemed automatically revised to equal the lowest prices and/or

most favorable terms at which Supplier shall have sold or shall have

offered such goods and payments shall be made accordingly." *Id.*

e. With respect to merchandise which was the subject of purchase orders

DONGFANG agreed that "Supplier shall warrant to ORBIT that no

merchandise sold to ORBIT infringes the patents, trademarks or

copyrights of others and shall provide to ORBIT all necessary licenses for

selling merchandise sold to ORBIT which is under license from a third

party.  *Id*. at 7.

      f.      DONGFANG further agreed "Indemnification:  Supplier shall protect,

defend, hold harmless and indemnify Purchaser from and against any and

all claims, actions, liabilities, losses, costs and expenses, including

reasonable attorney fees and costs, even is such claims groundless,

fraudulent or false, arising out of any actual or alleged infringement of nay

[sic] patent, trademark, tradedress or copyright by any merchandise sold to

the Purchaser hereunder."  *Id.* at 5.

      g.      DONGFANG further agreed that "the goods do not infringe upon or

violate any patent, copyright, trademark, trade name, trade dress or,

without limitation, any other rights belonging to others."  *Id.* at 4.

      h.      "Supplier shall protect, defend, hold harmless and indemnify Purchaser

from and against any and all claims, actions, liabilities, losses, costs and

expenses, including attorneys' fees and court costs, even if such claims are

groundless, fraudulent or false, arising out of any actual or alleged

infringement of any patent, trademark, or copyright by any merchandise

sold to the purchaser hereunder."  *Id*. at 3.

    31.    DONGFANG further agreed that any failure to comply with any of the Supplier

Agreement's Terms and Conditions would constitute a breach:  "failure to comply with each and

every term of [an] order shall constitute an event of default and shall be grounds for the exercise by Purchaser of any of the remedies provided for in these Terms and Conditions." *Id.* at 4.

32.     Pursuant to the Supplier Agreement,  DONGFANG was also are required to provide ORBIT with 30-days notice before assigning, factoring, or otherwise transferring the right to receive payment under the Supplier Agreement. *Id.* at 1.

33.     In the event of a breach of this term, "Purchaser shall have the right to take deductions or other set offs against any payment assigned, transferred or factored by the Supplier and Supplier shall defend and indemnify Purchaser against and hold Purchaser harmless from any and all lawsuits, claims, actions, damages (including reasonable attorneys fees, court costs, obligations, liabilities, or liens) arising or imposed in connection with the assignment or transfer or factoring of any account or right arising thereunder." *Id.*

## DONGFANG AND LUO JUN'S UNLAWFUL ACTS

### *Conspiracy*

34.     Prior to July of 2010, ORBIT is informed and believes that DONGFANG and LUO JUN entered into a conspiracy with others to harm ORBIT's business relationships with its customers, suppliers and other third parties.

35.     The persons and entities in this conspiracy include but are not limited to Janice Capener, dba KJ, KJ Peng, Jie Kuang, Janice J. Kuang and other aliases not yet known to Orbit (herinafter "Janice Capener.").  The conspiracy also includes Dan Capener, both former employees of ORBIT, Charlie Crump, who was hired to assist the conspiracy and SunHills International LLC ("SunHills"), an entity created for the purposes of furthering the conspiracy.

36.     ORBIT is further informed and believes that other currently unknown parties, including potentially other competitors of ORBIT, also participated in the conspiracy.

37.     Hereinafter those participating in the conspiracy, including but not limited to DONGFANG, LUO JUN, Janice Capener, Dan Capener, Charlie Crump and other parties not yet known to ORBIT shall be referred to as the "Conspirators" and the actions undertaken by the Conspirators to harm ORBIT shall be referred to as the "Conspiracy."

***DONGFANG'S Improper Patents***

38.     As noted above, under the Supplier Agreement, DONGFANG and those acting under the Supplier Agreement, including LUO JUN, specifically agreed that they would not use ORBIT's confidential and proprietary information, including designs, data or know how directly or indirectly, for the benefit of any other party, including themselves, without ORBIT's prior consent.  In connection with its agreements and business dealings with DONGFANG, ORBIT provided DONGFANG with drawings and physical samples of ORBIT products.

39.     Despite this obligation, commencing in 2007, without ORBIT's knowledge, and in purposeful violation of the rights of ORBIT, DONGFANG took ORBIT's designs,  technical data and physical products and applied for and was granted patents in China on ORBIT's designs and products.

40.     In applying for these patents, DONGFANG not only misrepresented itself as the innovator and creator of the product designs, but it also misrepresented that there were not any prior disclosures of these designs, even though ORBIT had, prior to the wrongful filing of these patent applications, advertised, sold, offered to sell and tested these products or slight variations of these products, both in the United States and in China.

41.     Because ORBIT has sold and offered these products for sale and publicly displayed these products for years prior to the wrongful filing of these patent applications, the patents are invalid.

42.     When the Chinese patents were issued, DONGFANG did not notify ORBIT of the patents or otherwise inform ORBIT that it had usurped ORBIT's rights in these products by filing these applications.

43.     Instead, DONGFANG continued to solicit more business from ORBIT and worked to expand the line of products that it manufactured for ORBIT.  ORBIT is further informed and believes that commencing approximately two years ago, DONGFANG, without ORBIT consent or authorization, commenced utilizing ORBIT's proprietary names, trademarks, trade dress and confidential information to manufacture products which ORBIT had developed. DONGFANG further created tooling for such products without ORBIT's consent.  ORBIT is informed and believes that such efforts were undertaken so that DONGFANG could force ORBIT to purchase patented products from DONGFANG – even though DONGFANG knew that the patents it had filed were invalid.

44.     ORBIT is informed and believes that DONGFANG and LUO JUN filed for these patents in connection with the Conspiracy and with the aid of one or more Conspirators, and failed to inform appropriate government officials regarding facts which would have prevented the patents from issuing, if such facts had been appropriately disclosed to these officials.

***DONGFANG'S Price Increases and Failure to Ship Products***

45.     In 2009 and 2010, as anticipated by and pursuant to the terms of the Supplier Agreement, DONGFANG accepted purchase orders from ORBIT and agreed to ship products to ORBIT.  Despite DONGFANG's acceptance of these purchase orders, commencing in the summer and fall of 2010, DONGFANG began demanding increased  prices for the products it had agreed to ship, claiming that it was facing price increases from its own vendors and suppliers of raw materials.  In fact, as part of its course of dealing with DONGFANG, ORBIT would

provide DONGFANG with initial selling season forecasts and other data, to allow DONGFANG

to lock in prices with raw material suppliers.  Such information was provided so that

DONGFANG could meet prices provided in ORBIT's advanced forecasts and in its purchase

orders.

46.     Even though the Supplier Agreement and related terms of ORBIT purchase orders

prevented DONGFANG from raising prices on items subject to accepted purchase orders,

ORBIT agreed to pay higher prices, due in part to the pressures associated with ORBIT's

seasonal business and ORBIT's need to satisfy customer demands.

47.     Still, as shipping deadlines approached, DONGFANG and/or LUO JUN refused

to ship products by the accepted purchase orders' deadlines unless ORBIT agreed to pay for the

ordered products in full before they were shipped and to accept all products without inspection.

48.     DONGFANG's and/or LUO JUN's demands were contrary to the terms of the

Supplier Agreement, which provided that payments were due "TT60," which means that

payments are not due on purchase order until sixty (60) days after the products have been

shipped.

49.     The Supplier Agreement also provides that all ordered goods must be provided in

good and undamaged condition and fit for their intended use.

50.     To this end, the Agreement requires that "[a]ll goods shall be subject to inspection

and test by the purchaser and its agents or employees and any governmental agency to the extent

practicable at any and all times and places including the period of manufacture and prior to final

acceptance by the customer."

51.     Critical for ORBIT's seasonal and time-sensitive business, the Supplier Agreement also requires DONGFANG and LUO JUN to ship ordered product during shipment windows identified in accepted purchase orders.

52.     The Supplier Agreement provides that "THE TIME SPECIFIED HEREIN FOR SHIPMENT OF GOODS IS OF THE ESSENCE OF THIS AGREEMENT AND FAILURE TO SHIP WITHIN SUCH TIME SHALL BE CONSIDERED A MATERIAL BREACH OF THE AGREEMENT AND SUBJECT TO" the contractual remedies provided in the Supplier Agreement.

53.     As noted in greater detail below, ORBIT is informed and believes that DONGFANG and LUO JUN took the actions of raising prices and refusing to ship products as part of the Conspiracy, to cause ORBIT to look bad in the eyes of its customers so that DONGFANG, LUO JUN and the other Conspirators could take business away from ORBIT by supplying products at lower pricing directly to ORBIT customers.

***DONGFANG Sold Products to Competitors at Lower Prices***

54.     In addition, under the Supplier Agreement, DONGFANG and LUO JUN guaranteed the prices of the products ordered by ORBIT against DONGFANG's "own price decline and against legitimate competition" until the date of shipment.

55.     Specifically, the Supplier Agreement provides that "[i]n the event that prior to final shipment under this order, Supplier sells or offers to sell to others goods substantially of the same kind as ordered herein at lower prices and/or terms more favorable to a third party than those stated in this order, the prices and/or terms herein shall be deemed automatically revised to equal the lowest prices and/or most favorable terms at which Supplier shall have sold or shall have offered such goods and payments shall be made accordingly."

56.     During the second half of 2010, when DONGFANG and/or LUO JUN were raising ORBIT's prices and then refusing to ship accepted purchase orders, ORBIT is informed and believes DONGFANG and/or LUO JUN sold and offered to sell products to SunHills, at prices lower than the prices DONGFANG was then offering to ORBIT.  ORBIT is further informed and believes that contrary to the terms of the Supplier Agreement, DONGFANG offered such products to other competitors of ORBIT including John Doe competitors that are not yet known to ORBIT, at prices lower than those offered to ORBIT.  ORBIT is further informed and believes that contrary to the terms of the Supplier Agreement, DONGFANG, LUO JUN and SunHills have offered ORBIT products to ORBIT customers, including Wal-Mart, Home Depot and Lowes at prices lower than those DONGFANG offered to ORBIT.  ORBIT is further informed and believes that Defendants offered these products to SunHills, ORBIT customers and competitors at lower prices, during the time frame when Defendants were raising prices to ORBIT.  Many of the products offered to SunHills and ORBIT's customers were products based on or which utilized ORBIT's proprietary designs, logos, patents, trademarks and trade dress.  ORBIT is further informed and believes DONGFANG has offered to sell ORBIT proprietary products on the Internet, without authorization or consent from ORBIT. Orbit is further informed and believes that DONGFANG has represented, on the internet and elsewhere that it is ORBIT, that ORBIT is a subsidiary of DONGFANG and otherwise claimed to be associated with ORBIT.

57.     ORBIT is further informed and believes that the actions described in this section were part of the Conspiracy and that one or more Conspirators, including Janice Capener, SunHills, LUO JUN and John Doe Defendants as yet not yet known, encouraged DONGFANG to breach its agreement with ORBIT, to offer prices lower then those offered to ORBIT, and, in

fact, to increase prices to ORBIT while lowering prices to others, and that all such activities were part of the Conspiracy to damage ORBIT, take business away from ORBIT and unlawfully compete with ORBIT.  As an additional part of the Conspiracy, ORBIT is also further informed and believes that DONGFANG purposefully sold certain products to ORBIT using inferior materials which did not comply with ORBIT's specifications.

58.     After DONGFANG and LUO JUN refused to ship several accepted purchase orders, ORBIT notified DONGFANG and/or LUO JUN that they were in breach of the Supplier Agreement and demanded that DONGFANG and LUO JUN comply with the parties' contract and ship the products ordered in the accepted purchase orders under the terms and conditions of the parties' executed contract and cease infringing on ORBIT's patents and otherwise misusing ORBIT's protected designs and other information.

59.     DONGFANG refused.  Instead, ORBIT is informed and believes DONGFANG has manufactured and sold products to ORBIT customers and competitors that had been originally ordered by ORBIT.

60.     ORBIT is further informed and believes that the Conspirators intended, as part of the Conspiracy, to preclude ORBIT from having products to sell to its customers and then offered the products originally manufactured or ordered to be manufactured for ORBIT to ORBIT's customers as part of the Conspiracy and in furtherance of the objectives of the Conspiracy.

### Factoring ORBIT's Debt

61.     Pursuant to the Supplier Agreement,  DONGFANG AND LUO JUN are required to provide ORBIT with 30-days notice before assigning, factoring, or otherwise transferring the right to receive payment under the Supplier Agreement.

15

62.     Contrary to this provision and in furtherance of the Conspiracy, DONGFANG and LUO JUN assigned certain debt owed to it by ORBIT to defendant SINOSURE.

63.     This debt was assigned because DONGFANG and LUO JUN and the other co-Conspirators knew that the plans described above would likely result in ORBIT's refusal to pay sums otherwise owed to DONGFANG.

**Breach of the Supplier Agreement and Right to a Set Off**

64.     As provided in the Supplier Agreement "failure to comply with each and every term of [an] order shall constitute an event of default and shall be grounds for the exercise by Purchaser of any of the remedies provided for in these Terms and Conditions."

65.     Upon their  failure to comply with this provision, "Purchaser shall have the right to take deductions or other set offs against any payment assigned, transferred or factored by the Supplier and Supplier shall defend and indemnify Purchaser against and hold Purchaser harmless from any and all lawsuits, claims, actions, damages (including reasonable attorneys fees, court costs, obligations, liabilities, or liens) arising or imposed in connection with the assignment or transfer or factoring of any account or right arising thereunder."

66.     The Supplier Agreement provides additional remedies to those provided under the Utah Uniform Commercial Code.

67.     In addition to damages, the Supplier Agreement provides ORBIT with the right to withhold payment to DONGFANG and LUO JUN based on their failure to comply with any term, guarantee, or warranty.

***DONGFANG Accuses ORBIT of Patent Infringement***

68.     After ORBIT learned that DONGFANG refused to honor the terms of its previously accepted purchase orders, ORBIT approached other suppliers in China regarding manufacturing products to replace those that DONGFANG and LUO JUN refused to produce. Shortly before one such factory in China was set to ship such products to the United States, the factory was informed by Chinese custom officials that DONGFANG had accused them of patent infringement and the products were held at a Chinese port.

69.     At the same time, this factory was also accused of other alleged irregularities associated with exporting products to ORBIT in the United States.  ORBIT is informed and believes that the custom officials were provided with false and misleading information provided to it by DONGFANG, LUO JUN or other Conspirators.

70.     Because these products were produced by this factory to replace products that were the subject of prior purchase orders accepted by DONGFANG they are subject to the provisions of the Supplier Agreement and purchase orders noted above, which required DONGFANG to indemnify ORBIT should products manufactured pursuant to the terms of purchase orders be the subject of patent infringement allegations.

71.     In communications between LUO JUN and ORBIT representatives in China, LUO JUN has informed ORBIT that he has the ability to stop ORBIT from shipping any products out of China unless ORBIT agrees to certain compensation demands requested by LUO JUN.

72.     LUO JUN has further informed ORBIT that he will continue to solicit ORBIT's customers and assert his patents against other ORBIT products unless ORBIT meets his financial demands.

73.     As noted above, the patents which DONGFANG and LUO JUN have obtained in China were obtained fraudulently.  DONGFANG and LUO JUN both knew the products which were the subject of these patents did not meet the criteria needed for patented ability.  For example, among other things, these products have been freely available in China and elsewhere for many years prior to the date the patent applications were filed.

74.     ORBIT is further informed and believes that the actions and activities described in this section of the Complaint, including the filing of patent applications and wrongful accusations of patent infringement are part of the Conspiracy and have been enabled by one or more Conspirators.

*Theft of Trade Secrets, Misrepresentations, Bribery*

75.     When members of the Conspiracy have approached ORBIT customers, including but not limited to Wal-Mart, Home Depot and Lowes, members of the Conspiracy have falsely informed ORBIT customers that ORBIT is nothing more than a middleman and that the Conspirators in fact manufacture all or most of the products sold by ORBIT in the United States. The Conspirators also falsely claim that they are the innovators of ORBIT products when in fact Conspirators did not innovate, but instead usurped the innovations of ORBIT.

76.     In truth, DONGFANG has manufactured only a limited number of items for ORBIT and the vast majority of the products ORBIT sells to its customers in the United States are manufactured by ORBIT and/or by other suppliers based on designs provided by ORBIT. Thus, when DONGFANG tells ORBIT customers that DONGFANG is ORBIT's "main supplier" or that ORBIT is merely a "trading company," or otherwise suggests that DONGFANG is the primary manufacturer, supplier and innovator of ORBIT products, such statements are false, misleading and deceptive and are made to harm ORBIT and to make ORBIT's customers

18

believe that others, including the Conspirators, are in fact the innovators and the primary persons behind ORBIT's success, when in fact ORBIT is the innovator and the company providing successful products in the market.

77.     ORBIT is further informed and believes the Conspirators have also utilized financial data, customer lists, product lists and other such data stolen from ORBIT, including data stolen by Dan and Janice Capener and similar data in the possession of DONGFANG and LUO JUN, but subject to the confidentiality restrictions in the Supplier Agreement.  Such information has been used to legitimize claims made to ORBIT customers that ORBIT is nothing more than a middleman.

78.     Among other things, ORBIT is informed and believes that Defendants  provided ORBIT customers with data concerning which products were that customers top selling products. ORBIT customers, ORBIT is informed and believes, were also provided with specific dollar figures concerning sales made by ORBIT to that supplier in the previous year.

79.     Because such information should be known only to ORBIT and the specific retailer, the unlawful possession and use of this information created assurances, in the minds of these retailers, that the false claims made by the Conspirators were in fact true.

80.     ORBIT is further informed and believes the Conspirators have offered bribes, both in China and in the United States, to gain market share and further the objectives of the Conspiracy.

***Breach of Janice Capener's Non-Compete Agreements***

81.     In furtherance of the Conspiracy, DONGFANG, LUO JUN and other members of the Conspiracy also induced Janice Capener, a former ORBIT employee, to breach non-compete

agreements Janice Capener has with ORBIT and further induced her to misappropriate trade secret information from ORBIT, in furtherance of the Conspiracy.

*False Claims in Asia*

82.     In furtherance of the Conspiracy and again in an effort to harm ORBIT by reducing the number of suppliers willing to work for ORBIT, Conspirators have engaged in a systematic effort to inform suppliers in China of false facts concerning ORBIT, including false facts concerning ORBIT's credit worthiness and its ability to pay debts when due.

83.     Among other things, ORBIT is informed and believes that the Conspirators have told other suppliers in China and CHINA EXPORT that ORBIT breaches its agreements and fails to pay its obligations when due.  ORBIT suppliers and the principals of ORBIT suppliers have also been threatened with harm, if they conduct business with ORBIT.

84.     In addition, ORBIT is informed and believes that the Conspirators have also informed others in China that the Conspirators have the ability to influence government officials in China and will prevent and preclude products which are being manufactured from ORBIT from leaving China.  In fact, Conspirators caused at least one container of ORBIT goods to be detained in China, forcing ORBIT to post a bond to gain the release of the container, after a delay of several weeks.

85.     ORBIT is further informed and believes Defendant CHINA EXPORT has also made false claims regarding ORBIT to factories and suppliers in China.

*Infringement*

86.     On information and belief, over the course of the parties' relationship, and now with increasing regularity, DONGFANG and LUO JUN have and continue to make, sell and/or

offer for sale or allow others to make, use, sell and/or offer for sale products that infringe on ORBIT's patents, trademarks and trade dress.

87.     Upon information and belief, DONGFANG and LUO JUN have and continue to manufacture, market, and sell over the internet and directly to ORBIT's existing customers products based on ORBIT's proprietary information, which they represent as their own, including the products made for ORBIT pursuant to purchase orders accepted by DONGFANG.

## FIRST CLAIM FOR RELIEF
## PATENT INFRINGEMENT

88.     ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

89.     On April 5, 2005, the '696 Patent was duly and legally issued to the assignee, ORBIT.

90.     On September 16, 2003, the '570 Patent was duly and legally issued to the assigned, ORBIT.

91.     On August 29, 2009, the '546 Patent was duly and legally issued and is now owned by ORBIT.

92.     On August, 24, 2004, the '026 Patent was duly and legally issued to the assignee, ORBIT.

93.     On October 20, 1998, the '916 Patent was duly and legally issued.

94.     ORBIT is the exclusive licensee of the '916 Patent.

95.     On November 18, 2003, the '428 Patent was duly and legally issued to the assignee, ORBIT.

96.     Upon information and belief, DONGFANG AND LUO JUN have infringed and continue to infringe the '696 Patent, the '570 Patent, the '546 Patent, the '026 Patent, and the

'428 Patent (the "Patents") by making, using, selling and/or offering to sell, or inducing or contributing to the infringement of the Patents in the United States, including the State of Utah, one or more of the Accused Products that are covered by one or more of the claims of the Patents.

97.     DONGFANG, LUO JUN and the Conspirators are liable for infringement of the Patents pursuant to 35 U.S.C. § 271.

98.     DONGFANG'S and LUO JUN's acts of infringement have caused damage to ORBIT, and ORBIT is entitled to recover from  DONGFANG and LUO JUN the damages sustained by ORBIT as a result of their  wrongful acts in an amount subject to proof at trial.

99.     As a consequence of the infringement complained of herein, ORBIT has been irreparably damaged to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless DONGFANG and LUO JUN are enjoined by this Court from committing further acts of infringement.

100.     Upon information and belief, one or more of DONGFANG's and LUO JUN's acts of infringement were made or will be made with knowledge of the Patents.  Such acts constitute willful infringement and make this case exceptional pursuant to 35 U.S.C. §§ 284 and 285 and entitle ORBIT to enhanced damages and reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

101.     ORBIT realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

102.     ORBIT has performed its obligations under the Supplier Agreement and has been ready,  willing and able to receive goods purchased from DONGFANG and LUO JUN.

103.    As set forth herein, DONGFANG and LUO JUN have breached one or more of the provisions of the Supplier Agreement; these breaches constitute a material breach of the Supplier Agreement.

104.    On information and belief, prior to shipment of ORBIT's outstanding orders, DONGFANG and LUO JUN offered and/or sold to third parties goods of substantially the same kind at lower prices and more favorable terms than DONGFANG and LUO JUN agreed to provide to ORBIT.

105.    On information and belief, DONGFANG and LUO JUN also disclosed and took for their own purpose and the purpose of others, ORBIT designs, data, and other confidential information.

106.    Moreover, DONGFANG and LUO JUN failed to match the lower prices and more favorable terms that they provided to ORBIT competitors and/or other third parties; instead, DONGFANG and LUO JUN insisted that ORBIT pay prices above those agreed to in accepted purchase orders and listed in initial selling season forecasts.

107.    DONGFANG and LUO JUN wrongfully refused to ship goods identified in ORBIT purchase orders until ORBIT agreed to alter the price, payment terms, and inspection rights agreed to in the Supplier Agreement and purchase orders.

108.    To date, DONGFANG and LUO JUN have failed to ship at least four accepted purchase orders within the agreed shipment windows, despite ORBIT's demands that DONGFANG and LUO JUN deliver the goods ordered.  Defendants have further failed and refused to meet the selling season requirements for these products consistent with the Supplier Agreement and course of conduct between the parties.

109.     DONGFANG and LUO JUN have also filed patent applications and enforced patents in China, threatened economic harm and threatened to sue other ORBIT suppliers in China, contrary to ORBIT's rights at law and in the Supplier Agreement.

110.     As a direct result of these breaches, ORBIT has been damaged in an amount to be proven at trial.

111.     Pursuant to the remedies provided in the Supplier Agreement and Utah law, ORBIT has withheld payments owed to DONGFANG and LUO JUN as a set off  or partial payment of the damages it has incurred as a result of DONGFANG's and LUO JUN's breaches.

112.     ORBIT notified DONGFANG and LUO JUN of its intention and reasons for doing so.

113.     In violation of the Supplier Agreement, DONGFANG and LUO JUN transferred the right to receive payment to an insurance company without first notifying ORBIT.

114.     As a consequence, ORBIT is also now without knowledge concerning who is the proper party to receive such payments.

115.     On January 6, 2010, CHINA EXPORT sent ORBIT a letter demanding payment from ORBIT.

116.     CHINA EXPORT advised ORBIT that DONGFANG and LUO JUN had reported an unpaid balance to CHINA EXPORT as its insurer.

117.     CHINA EXPORT indicated that this was a covered insurance claim and that CHINA EXPORT was now pursuing payment of the unpaid balance.

118.     Under the terms of the Supplier Agreement, ORBIT has a right of offset.  Any funds not used as an offset (if any) should be provided to such party as the Court deems is the appropriate party to receive such funds.

119.    ORBIT is being irreparably harmed by DONGFANG's and LUO JUN's breaches, and ORBIT has no adequate remedy at law.  ORBIT is therefore entitled to temporary, preliminary, and permanent injunctions barring DONGFANG and LUO JUN from engaging in further acts in breach of the Supplier Agreement.

**THIRD CLAIM FOR RELIEF**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

120.    ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

121.    DONGFANG and LUO JUN have a duty of good faith and fair dealing in connection with the Supplier Agreement.

122.    DONGFANG and LUO JUN have breached their duty of good faith and fair dealing by, among other things, depriving ORBIT of the fruits of its bargain under the Supplier Agreement, and by entering into a contract that they knew they did not intend to perform.

123.    DONGFANG and LUO JUN have further breached their duty of good faith and fair dealing by engaging in the Conspiracy and conspiring with the Conspirators to damage ORBIT.

124.    As a result of DONGFANG's and LUO JUN's breach of their duty of good faith and fair dealing, ORBIT has been damaged in an amount to be proven at trial.

125.    Moreover, ORBIT is being irreparably harmed by DONGFANG's and LUO JUN's breaches, and ORBIT has no adequate remedy at law.  ORBIT is therefore entitled to temporary, preliminary, and permanent injunctions barring DONGFANG and LUO JUN from engaging in further acts in breach of the Supplier Agreement.

**FOURTH CLAIM FOR RELIEF**
**SPECIFIC PERFORMANCE**

126.     ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

127.     Between August and November of 2010, DONGFANG and LUO JUN accepted at least 50 ORBIT purchase orders.

128.     The Supplier Agreement and accepted purchase orders are sufficiently clear, definite, and certain to make possible an order of specific performance.

129.     Notwithstanding, DONGFANG and LUO JUN refused and continue to refuse to deliver the ordered products.

130.     ORBIT has no adequate remedy at law for DONGFANG's and LUO JUN's failure to perform and ORBIT cannot be adequately compensated by an award of money damages.

131.     The sprinkler irrigation products manufactured by DONGFANG and LUO JUN for ORBIT are unique.  These products were manufactured by DONGFANG and LUO JUN based on ORBIT's protected designs, specifications, patents, trademarks and trade dress to meet ORBIT's particular needs and specifications.

132.     Replacement products are not readily available in the open market.

133.     As a result of the DONGFANG's and LUO JUN's refusal to perform the contract, ORBIT has been damaged in an amount to be proven at trial.

134.     Moreover, ORBIT is being irreparably harmed by DONGFANG's and LUO JUN's breaches, and ORBIT has no adequate remedy at law.  ORBIT is therefore entitled to temporary, preliminary, and permanent injunctions ordering DONGFANG and LUO JUN to specifically perform their obligations under the Supplier Agreement.

## FIFTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

135.   ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

136.   In light of DONGFANG's and LUO JUN's improper transfer of the right to payment in violation of the Supplier Agreement, ORBIT is operating under a legal cloud such that a justiciable controversy actually exists between ORBIT and the Defendants.

137.   ORBIT is entitled to a declaration of the parties' rights as follows:

a.   Defendants DONGFANG and LUO JUN breached the Supplier Agreement by transferring their right to payment without first notifying ORBIT.

b.   In light of this breach, as well as the breaches plead above, ORBIT is entitled to withhold payment as a deduction or setoff against the payment.

c.   CHINA EXPORT is barred from bringing any action or proceeding whatsoever, or making any threat, against ORBIT or ORBIT suppliers concerning allegations that ORBIT owes payment to CHINA EXPORT or ORBIT fails to pay claims when due.

138.   ORBIT is further entitled to an injunction requiring Conspirators to stop their unlawful activities.

## SIXTH CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

139.   ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

140.   Upon information and belief, DONGFANG and/or LUO JUN made false or misleading statements and representations to third parties, including statements to ORBIT's

customers and ORBIT suppliers, regarding ORBIT's products and designs, as well as the nature of its business model.

141.     ORBIT is also informed and believes DONGFANG, LUO JUN and CHINA EXPORT have made false claims regarding ORBIT's ability to pay its debts and has otherwise discouraged such suppliers from working with ORBIT.

142.     Upon information and belief DONGFANG also applied for patents on ORBIT's designs and specifications, with knowledge that DONFANG and/or LUO JUN did not invent or create the designs and with knowledge and belief that ORBIT created and owned the designs and that ORBIT had disclosed the products and designs to the public for many years.

143.     After ORBIT insisted on enforcing the terms of its contract with DONGFANG and refused to pay price increases, DONGFANG asserted infringement of its Chinese patents after manufacturing ORBIT's products for several years, and after accepting purchase orders for the products and manufacturing the products that were to be shipped directly to ORBIT's customers.  DONGFANG and LUO JUN have further interfered with ORBIT's economic relationships by using ORBIT trade secrets in manners not authorized by the Supplier Agreement, utilized trade secrets stolen by the Capeners and by entering into the other acts of the Conspiracy and acting with and on behalf of the Conspirators as noted above.

144.     ORBIT is also informed and believes that the Conspirators either have improperly influenced officials in China and perhaps others and/or claimed to have the ability to influence government officials and others to prevent products from being shipped outside of China and/or to gain business opportunities in the United States.

145.     All of these actions constitute an intentional interference with ORBIT's customers, including Wal-Mart, Home Depot and Lowes.

146.    These actions have also interfered with ORBIT's relationships with its other suppliers in China, specifically the actions of CHINA EXPORT and DONGFANG have created concerns among other Chinese manufacturers that ORBIT may withhold funds from them if they manufacture products for ORBIT.

147.    The above actions constitute actions taken for an improper purpose and/or by improper means.

148.    DONGFANG and LUO JUN have caused damage to ORBIT, its business, goodwill, and reputation, and these actions constitute wrongful and intentional interference with ORBIT's economic relations.

149.    Because these acts are willful and malicious ORBIT is also entitled to punitive damages.

### SEVENTH CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE AGAINST LUO JUN

150.    ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

151.    Upon information and belief, Defendant LUO JUN has intentionally induced DONGFANG to breach its agreement with ORBIT.  As described in greater detail above, these actions have been undertaken as part of the Conspiracy and in connection with the Conspirators.

152.    These actions were undertaken for improper purposes and by use of improper means.

153.    As a legal consequence of this conduct, ORBIT has been damaged, in amounts to be proven at trial.

154.    Because these acts are willful and malicious ORBIT is also entitled to punitive damages.

**EIGHTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE AGAINST JANICE CAPENER**

155.     ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

156.     Upon information and belief, DONGFANG and LUO JUN have intentionally induced Janice Capener to breach her non-compete agreements with ORBIT.  As described in greater detail above, these actions have been taken as part of the Conspiracy and in connection with the Conspirators.

157.     These actions were taken for improper purposes and by the use of improper means.

158.     As a legal consequence of this conduct, ORBIT has been damaged, in amounts to be proven at trial.

159.     Because these acts are willful and malicious ORBIT is also entitled to punitive damages.

**NINTH CLAIM FOR RELIEF**
**DEFAMATION AND INJURIOUS FALSEHOOD**

160.     ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

161.     Upon information and belief, DONGFANG and/or LUO JUN and/or CHINA EXPORT have knowingly made false statements about ORBIT or its products and/or services.

162.     Upon information and belief, recipients of statements understood the meaning of the defamatory meaning of the statements.

163.     Upon information and belief, DONGFANG's and/or LUO JUN's and/or SINOSURE's conduct was intentional and has caused economic harm to ORBIT and has harmed ORBIT's reputation.

164.     DONGFANG'S and LUO JUN's actions constitute business defamation.

165.     DONGFANG's and LUO JUN's actions constitute injurious falsehood.

166.     As a legal consequence of this conduct, ORBIT has been damaged, in amounts to be proven at trial.

167.     Because these acts are willful and malicious ORBIT is also entitled to punitive damages.

**TENTH CLAIM FOR RELIEF**
**FALSE ADVERTISING**

168.     ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

169.     DONGFANG sells and offers to sell ORBIT-designed products as its own and as the result of its own innovation.

170.     DONGFANG's and/or LUO JUN's representations, in commercial advertising and/or promotion, including sales and marketing calls and appointments, that it is the innovator of the products it manufactures, that ORBIT acts as its middle man and that they manufacture most of ORBIT's products are literally false and/or misleading as they misrepresent the nature, characteristics, and/or qualities of their products and/or commercial activities.

171.     DONGFANG's and LUO JUN's false and/or misleading representations of fact are made in interstate commerce.

172.   DONGFANG's and LUO JUN's representations regarding their relationship with ORBIT and their role in producing ORBIT brand sprinkler irrigation products are material in that consumers rely on these misrepresentations when making purchasing decisions.

173.   As a result of DONGFANG's and LUO JUN's actions in commercial advertising and promotion, there is actual deception or at least a tendency to deceive a substantial portion of the intended audience.

174.   DONGFANG's and LUO JUN's actions are likely to cause injury and/or a loss in goodwill, thus violating 15 U.S.C. § 1125(a).

175.   On information and belief, DONGFANG's and LUO JUN's actions are willful and deliberate.

176.   DONGFANG's and LUO JUN's false and/or misleading advertising has caused ORBIT actual damages in an amount to be proven at trial.  Such damages should be trebled as allowed by 15 U.S.C. § 1117(a).

177.   ORBIT is further entitled to recover DONGFANG's and LUO JUN's profits, the amount of which is currently unknown by ORBIT, and which amount should be trebled as allowed by 15 U.S.C. § 1117(a).

178.   This is an exceptional case pursuant to 15 U.S.C. §1117(a), and ORBIT is therefore entitled to recover its attorney fees from DONFANG and LUO JUN.

179.   Pursuant to 15 U.S.C. § 1117(a), ORBIT is also entitled to recover its costs of suit.

180.   ORBIT is being irreparably harmed by DONGFANG's and LUO JUN's false and/or misleading advertising and ORBIT has no adequate remedy at law.  ORBIT is therefore

entitled to preliminary and permanent injunctive relief barring DONFANG and LUO JUN from engaging in further acts violative of 15 U.S.C. § 1125(a).

**ELEVENTH CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114**

181.   ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein

182.   Upon information and belief, the use of the trademark HARD TOP by Defendants in connection with its sprinkler and irrigation products is identical to ORBIT's federally registered mark, namely U.S. Trademark Reg. No. 2,575,043.

183.   Additionally, the goods sold by Defendants in connection with the HARD TOP mark are closely related and/or identical to and sold and marketed through the same channels and to the same consumers as the goods sold by ORBIT in connection with its federally registered mark.

184.   Accordingly, the use of HARD TOP in connection with sprinkler and irrigation products is likely to cause confusion, or cause mistake, or to deceive consumers in light of ORBIT's federally registered mark.

185.   Upon information and belief, the use of the trademark HARD TOP by Defendants in connection with its sprinkler and irrigation products has infringed ORBIT's rights pursuant to the Lanham Act, 15 U.S.C. § 1114 and under the common law.

186.   Upon information and belief, ORBIT has suffered actual damages as a result of Defendants' trademark infringement in an amount to be proven at trial.  Additionally, the harm to ORBIT arising from Defendants' acts is not fully compensable by money damages.  ORBIT has suffered, and continues to suffer, irreparable harm that has no adequate remedy at law and that will continue unless Defendants' conduct is preliminarily and permanently enjoined.

187.    Upon information and belief, Defendants' continued use of a confusingly similar trademark is willful and intentional.  As a result, ORBIT is further entitled to treble damages and an award of costs and attorneys' fees.

## TWELFTH CAUSE OF ACTION
## TRADEMARK AND TRADE DRESS INFRINGEMENT – 15 U.S.C. § 1125

188.    ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

189.    Upon information and belief, the use of the trademark HARD TOP by Defendants in connection with its sprinkler and irrigation products as well as its marketing and sale is similar to the ORBIT federally registered mark, namely HARD TOP U.S. Trademark Reg. No. 2,575,043.

190.    In addition, ORBIT has sold sprinkler and irrigation products which have a distinctive look and feel which consumers and customers of ORBIT have come to associate with ORBIT.  ORBIT has further used distinctive brands, logos and packaging in connection with its sales of sprinkler and irrigation products.  ORBIT has also used distinctive coloring and a distinctive presentation of products in catalogs and trade magazines or the internet and in stores.  Such distinctive trademarks and trade dress (hereinafter "ORBIT Trademarks and Trade Dress") are rights belonging to ORBIT and rights which have been wrongfully misappropriated by Defendants.

191.    Additionally, the sprinkler and irrigation goods sold by Defendants are closely related to and sold and marketed through the same channels and to the same consumers as the goods sold by ORBIT in connection with ORBIT Trademarks and Trade Dress.

192.     Accordingly, the use by Defendants of ORBIT's Trademarks and Trade Dress in connection with sprinkler and irrigation products is likely to cause confusion, or cause mistake, or to deceive consumers in light of ORBIT's pre-existing rights.

193.     Upon information and belief, the use of the ORBIT's Trademarks and Trade Dress by Defendants in connection with its sprinkler and irrigation products has infringed ORBIT's rights pursuant to the Lanham Act, 15 U.S.C. § 1125 and under the common law.

194.     Upon information and belief, ORBIT has suffered actual damages as a result of Defendants' infringement in an amount to be proven at trial.  Additionally, the harm to ORBIT arising from Defendants' acts is not fully compensable by money damages.  ORBIT has suffered, and continues to suffer, irreparable harm that has no adequate remedy at law and that will continue unless Defendants' conduct is preliminarily and permanently enjoined.

195.     Upon information and belief, Defendants' continued use of confusingly similar trademarks and trade dress is willful and intentional.  As a result, ORBIT is further entitled to treble damages and an award of costs and attorneys' fees.

### THIRTEENTH CAUSE OF ACTION
### UNFAIR COMPETITION, UTAH CODE ANN. §§13-5A-102, 103 AND UTAH COMMON LAW

196.     ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein

197.     ORBIT owns all right, title and interest in and to U.S. Trademark Reg. No. 2,575,043.  ORBIT also has common law rights in the ORBIT's Trademarks and  Trade Dress for use in association with various products, including sprinkler and irrigation products, as well as the marketing and sales of such products.

198.    Upon information and belief, the use of ORBIT's Trademarks and Trade Dress by Defendants in connection with the sale and offer to sell of Defendants' sprinkler and irrigation products has infringed ORBIT's rights, as noted above.

199.    Additionally, the goods sold by Defendants are closely related to the goods sold by ORBIT.

200.    Accordingly, the use of ORBIT's Trademarks and Trade Dress in connection with sprinkler and irrigation products is likely to cause confusion, or cause mistake, or to deceive consumers in light of ORBIT's pre-existing rights..

201.    By engaging in the above-described activities, Defendants have infringed ORBIT's Trademarks and Trade Dress thereby engaging in unfair competition under Utah Code Ann. §§13-5a-102, 103 and under Utah common law.

202.    ORBIT has suffered actual damages as a result of unfair business practices by Defendants in an amount to be proven at trial.  Additionally, the harm to ORBIT arising from these acts by Defendants is not fully compensable by money damages.  ORBIT has suffered, and continues to suffer irreparable harm that has no adequate remedy at law and that will continue unless this unfair conduct by Defendants is preliminarily and permanently enjoined. Furthermore, ORBIT is entitled to its attorneys' fees and costs.

## FOURTEENTH CLAIM FOR RELIEF
## MISAPPROPRIATION OF TRADE SECRETS

203.    ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

204.    Information regarding ORBIT's designs and technical data, customer lists and data, and financial information acquired by Conspirators pursuant to an employment or contractual relationship with ORBIT are proprietary and confidential and constitute trade secrets

under the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1 (2010) ("Proprietary Information").

205.   The Proprietary Information is known only to ORBIT and certain of its authorized employees and agents, and is not generally known to or ascertainable by the public. The information thereby derives independent economic value.

206.   ORBIT engages in extensive efforts to keep the Proprietary Information secret, including restricting disclosure of such Proprietary Information only to those employees and agents who have a specific need to know such information.

207.   ORBIT is informed and believes, and on that basis alleges that, by their actions described herein, Conspirators have willfully and maliciously misappropriated and continue to misappropriate Proprietary Information of ORBIT by improper means.

208.   ORBIT is being irreparably harmed by the Conspirators' misappropriation of ORBIT's Proprietary Information, and has no adequate remedy at law. ORBIT is therefore entitled to injunctive relief barring the Conspirators, including DONGFANG and LUO JUN, from misappropriating ORBIT's Proprietary Information.

209.   Furthermore, ORBIT has been damaged by the Conspirators' misappropriations of ORBIT's Proprietary Information in an amount to be determined at trial, and the Conspirators have been unjustly enriched by their misappropriations.

210.   ORBIT is also entitled to recover double its damages and its attorneys' fees in light of the Conspirators' willful and malicious misappropriations of ORBIT's Proprietary Information.

## FIFTEENTH CLAIM FOR RELIEF
## CONSPIRACY

211.    ORBIT realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

212.    DONGFANG and LUO JUN knowingly joined and agreed to a plan to misappropriate ORBIT's trade secrets, interfere with its existing and potential customer relationships, and other business relationships in violation of applicable law.

213.    Defendants combined with each other and the Conspirators to make the misrepresentations and omissions described in this Complaint.

214.    Each of the misrepresentations and omissions described herein and the transactions which led to them was an overt act undertaken in furtherance of these conspiracies.

215.    As a direct result, ORBIT has been damaged in an amount to be proven at trial.

216.    Based on DONGFANG and LUO JUN's intentional and malicious conduct, ORBIT also is entitled to recover punitive damages from DONGFANG and LUO JUN.

## PRAYER FOR RELIEF

WHEREFORE, ORBIT respectfully prays for the following relief:

1.      Judgment that DONGFANG AND LUO JUN have each infringed the '696 Patent, the '026 Patent, the '546 Patent, the '570 Patent and the '428 Patent.

2.      An order requiring DONGFANG AND LUO JUN to account for and pay to ORBIT all damages caused by their infringement of the '696 Patent, the '026 Patent, the '570 Patent and the '428 Patent, whether lost profits or a reasonable royalty, and to enhance such damages by three times in light of DONGFANG's and LUO JUN's willful infringement, all in accordance with 35 U.S.C. § 284;

3.     That the Court enter judgment finding that Defendants use of ORBIT Trademarks and Trade Dress, or trademarks and trade dress confusingly similar thereto, is likely to cause confusion and will result in unfair competition under Federal and State law.

4.     Entry of a permanent injunction pursuant to 35 U.S.C. § 283 enjoining DONGFANG's AND LUO JUN's, their officers, agents, servants, employees and those persons in active concert or participation with them from further acts of patent infringement, trademark infringement and trade dress and the entry of a permanent judgment enjoining DONGFANG's AND LUO JUN's, their officers, agents, servants, employees and those persons in active concert or participation with them from further acts violative of Federal and state law.

5.     An order that ORBIT be granted pre-judgment and post-judgment interest on the damages caused to it by reason of DONGFANG's and LUO JUN's patent infringement;

6.     A declaration by the Court that this is an exceptional case and that ORBIT be granted its reasonable attorneys' fees in accordance with 35 U.S.C. § 285 and 15 U.S.C. §1117(a);

7.     A judgment for punitive damages, three times ORBIT's actual damages, in an amount to be determined at trial.

8.     A finding that DONGFANG and LUO JUN have breached their contracts with ORBIT, misappropriated ORBIT trade secrets, engaged in false advertising and defamatory conduct.

9.     An order compelling DONGFANG AND LUO JUN to account to ORBIT for their profits arising from the acts complained of herein, and that ORBIT be awarded treble DONGFANG's AND LUO JUN's profits, in accordance with the accounting demanded.

10.     An order that the Supplier Agreement and accepted purchase orders for ORBIT sprinkler irrigation parts be specifically performed.

11.     A declaratory judgment barring CHINA EXPORT from pursuing payment under the Supplier Agreement, from making defamatory statements about ORBIT, and from blacklisting ORBIT in China.

12.     An order awarding pre- and postjudgment interest.

13.     An award for ORBIT's costs of suit, including reasonable expenses and attorneys fees.

14.     Such other and further relief as contemplated by this Complaint and/or as  the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ORBIT demands a trial by jury of all issues so triable.

DATED this 9th day of June, 2011.


GREG ERICKSEN
Attorney at Law


RAY QUINNEY & NEBEKER P.C.


  /s/ Mark M. Bettilyon
Mark M. Bettilyon
Arthur B. Berger
Ryan B. Bell
Mica McKinney

*Attorneys for Plaintiff*

Plaintiff's Address:

845 North Overland Road
North Salt Lake, UT 84054

#1135464